**Wilberta JOHNSON, on behalf of herself and all others similarly situated, Plaintiffs,**

v.

**CITY OF PLAINFIELD, Thomas Frank, John C. Propsner, Jr., Harold Gibson, Jerome Harris, Richard Taylor, Harold W. Mitchell, Gwendolyn Crews, John M. Bramnick, John C. Campbell, Francis Meeks III, Joseph Scott, Elizabeth Urauhart, Defendants.**

Civ. No. 87–4335.

United States District Court, D. New Jersey.

March 8, 1990.

Daniel A. Williamson, Plainfield, N.J., for defendants.

Jack N. Frost, Plainfield, N.J., for plaintiffs.

Agnes I. Rymer, Clapp & Eisenberg, Newark, N.J., Special Master appointed by Judge Sarokin.

SAROKIN, District Judge.

In an earlier opinion this court warned of the dangers to our democracy in permitting searches of the innocent in order to find the guilty.

> If we choose to violate the rights of the innocent in order to discover and act against the guilty, then we will have transformed our country into a police state and abandoned one of the fundamental tenets of our free society. In order to win the war against drugs, we must not sacrifice the life of the Constitution in the battle. *Capua v. City of Plainfield*, 643 F.Supp. 1507, 1511 (D.N.J.1986).

This action arises out of that prior proceeding. It confirms this court's prediction and demonstrates the injurious effects of testing upon those who are innocent of any illegal drug use. The circumstances of the tests were set forth in the court's earlier opinion as follows:

> On May 26, 1986 all fire fighters and fire officers employed by the defendant, City of Plainfield, were ordered to submit to a surprise urinalysis test. At 7:00 A.M. on May 26, the Plainfield Fire Chief and Plainfield Director of Public Affairs and Safety entered the city fire station, secured and locked all station doors and awakened the fire fighters present on the premises. Each fire department employee was required to submit a urine sample while under the surveillance and supervision of bonded testing agents employed by the city. Defendants repeated a substantially similar procedure on May 28 and June 12, 1986 until approximately all of the 103 employees of the Plainfield Fire Department were tested.

> Prior to May 26, the Plainfield Fire employees had no notice of defendants' intent to conduct mass urinalysis. Such urinalysis had not been provided for in the collective bargaining agreement between the fire fighters and the City. Nor was any written directive, order, departmental policy or regulation promulgated establishing the basis for such testing and prescribing appropriate standards and procedures for collecting, testing, and utilizing the information derived.

> Between July 10 and July 14, 1986, sixteen firefighting personnel were advised that their respective urinalysis had proved positive for the presence of controlled dangerous substances. They were immediately terminated without pay. Those who tested positive were not informed of the particular substance found in their urine or of its concentration. Neither were they provided copies of the actual laboratory results. Written complaints were served ten days later on July 24, 1986, charging these fire fighters with numerous violations including "commission of a criminal act". At about the same time, employees of the Plainfield Police Department were subjected to similar urine testing. *Capua v. City of Plainfield*, 643 F.Supp. at 1512.

This class action was instituted by plaintiffs seeking damages to compensate them for the violation of their constitutional rights as a result of the foregoing drug tests. This court granted summary judg-

ment for the plaintiffs on September 18, 1986. By consent a special master, Agnes I. Rymer, was appointed to hear the individual claims of the parties and to submit a report and recommendation to the court as to the compensatory damages, if any, each class member should receive.

The report was filed on February 6, 1990. The special master thoroughly, carefully and with great sensitivity considered the claims of each person and recommended a specific award to each. As testament to the special master's competence, no party, plaintiffs or defendants, submitted any objections.

In summary the master's report reflects that the tests themselves caused humiliation and embarrassment. Employees were ordered to urinate in the presence of others, and often were required to present their samples to a member of the opposite sex. Some experienced difficulty in urinating on demand, were subjected to derogatory remarks as a result, and feared that their inability to do so would be considered evidence of guilt.

Many expressed fear that faulty testing procedures, traces of other medication or a mix-up in samples, might produce false positive results causing injury to their careers and reputations. Some feared that other medical conditions would be disclosed which might adversely affect their employment. The wait for results created anxieties, even among those who knew that they were drug free. Many were the subject of false rumors and the victims of ridicule both within the department and the community. Even criminal defendants seized upon the opportunity to make derogatory remarks suggesting that the officers themselves might be criminals by reason of drug use. The morale of both the fire and police forces was affected, and their respect in the eyes of the public was diminished. Most significantly, even those police officers and firefighters who favored random drug testing were not spared the same humiliation and embarrassment experienced by those who opposed it.

Finally, this court suggests that the factual findings in this matter should cause us to pause in the nationwide rush toward massive and mandatory drug testing. The determination of whether the Constitution is being violated should not be measured by whether there are benefits in doing so. Even if drug testing is found to be constitutional, we must measure what we have gained in finding the guilty against what we have wrought upon the innocent—and upon liberty itself.

The report and recommendation of the master are accepted and adopted. Counsel for plaintiff is directed to submit an appropriate form of judgment.